JOURNAL ENTRY and OPINION
{¶ 1} Plaintiff Andre Thompson brought a nuisance action against defendant city of Brook Park after a motorcycle he operated struck an abandoned tire laying in the middle of State Route 237, causing him to lose control and crash. Thompson's nuisance theory was premised on evidence that the tire had been in the road for at least 15 hours before he struck it and that the city should have discovered the tire and removed it from the roadway. At the close of all the evidence, the court directed a verdict in the city's favor on grounds that Thompson failed to present any evidence to show that he actually struck the tire. Thompson appeals, claiming the court erred by directing the verdict and further erred by limiting the testimony of his medical expert.
 1. I {¶ 2} Thompson maintains that the court erred by directing a verdict because the court appeared to believe that evidence of causation had to come directly from the plaintiff, as opposed to other witnesses. Thompson did not testify in his case-in-chief, and thus gave no testimony to show that he struck the tire. He did, however, present a witness who testified that he struck the tire.
 1. A {¶ 3} Thompson premised his cause of action on nuisance. As relevant here, there are two types of nuisance: absolute and qualified. In Metzger v. The Pennsylvania, Ohio Detroit R.R.Co. (1946), 146 Ohio St. 406, paragraphs one and two of the syllabus state:
 {¶ 4} "1. An absolute nuisance, or nuisance per se, consists of either a culpable and intentional act resulting in harm, or an act involving culpable and unlawful conduct causing unintentional harm, or a nonculpable act resulting in accidental harm, for which, because of the hazards involved, absolute liability attaches notwithstanding the absence of fault.
 {¶ 5} "2. A qualified nuisance, or nuisance dependent on negligence, consists of an act lawfully but so negligently or carelessly done as to create a potential and unreasonable risk of harm, which in due course results in injury to another." (Taylorv. City of Cincinnati, 143 Ohio St., 426, approved and followed.)
 {¶ 6} Thompson's allegations make out a claim of qualified nuisance since he does not allege absolute liability on the city's part. A qualified nuisance is premised upon negligence. To recover damages for a qualified nuisance, negligence must be averred and proven. Allen Freight Lines, Inc. v. Consol. RailCorp. (1992), 64 Ohio St.3d 274, 276. In order to establish an action in negligence, a party must establish the three essential elements: duty, breach of the duty, and an injury proximately caused by the breach. Menifee v. Ohio Welding Products, Inc.
(1984), 15 Ohio St.3d 75, 76, 472 N.E.2d 707.
 {¶ 7} Civ.R. 50(A) permits the court to direct a verdict "if, after construing the evidence most strongly in favor of the party against whom the motion is directed, `reasonable minds could come to but one conclusion upon the evidence submitted and that conclusion is adverse to such party.'" A motion for directed verdict presents a question of law because a court must examine the sufficiency of the evidence, not weigh the evidence or try the credibility of the witnesses. Wagner v. Roche Laboratories
(1996), 77 Ohio St.3d 116, 119, 1996-Ohio-85, 671 N.E.2d 252. Because a motion for directed verdict presents a question of law, we apply a de novo standard of review.
 1. B {¶ 8} The court clearly erred when it stated its belief that Thompson himself had to testify and state that he struck the tire. Proximate cause is defined as "[t]hat which immediately precedes and produces the effect, as distinguished from a remote, mediate, or predisposing cause; that from which the fact might be expected to follow without the concurrence of any unusual circumstance; that without which the accident would not have happened, and from which the injury or a like injury might have been anticipated." Jeffers v. Olexo (1989), 43 Ohio St.3d 140,143, quoting Corrigan v. E.W. Bohren Transport Co. (C.A.6, 1968), 408 F.2d 301, 303, certiorari denied (1969),393 U.S. 1088. Causation is an element of a nuisance claim and can be proven by any evidence, not just the testimony of the plaintiff. Indeed, in medical malpractice cases, it is the rule that causation beyond that which is so apparent as to be a matter of common knowledge must be proven by expert testimony, not by the plaintiff. See Darnell v. Eastman (1970), 23 Ohio St.2d 13, syllabus. Were the court's view correct, one could never establish the elements of a wrongful death claim.
 {¶ 9} Thompson presented the testimony of a witness who saw him strike the tire. That testimony sufficiently established proof of causation regardless of whether he took the witness stand The court erred by directing a verdict due to Thompson's failure to testify as to proximate cause.
 1. C {¶ 10} Despite the court's error, the city urges us to affirm the directed verdict because Thompson failed to maintain his burden of proving that the accident was, "more likely than not, directly and proximately caused by the City's negligence."
 {¶ 11} The city is correct to note that we are "not authorized to reverse a correct judgment merely because erroneous reasons were assigned as the basis thereof." Joyce v. GeneralMotors Corp. (1990), 49 Ohio St.3d 93, 95. Since a motion for a directed verdict raises questions concerning the legal sufficiency of the evidence, we can nonetheless determine whether the court should have directed a verdict based upon the evidence.
 {¶ 12} R.C. 723.01 states that municipal corporations shall have special power to regulate the use of the streets, including the care, supervision, and control of the public highways. In order to hold a municipal corporation liable for a violation of R.C. 723.01, the injured party must show either that the municipality's agents or officers actually created the problem, or that it had notice, actual or constructive, of the alleged nuisance. Vogel v. Wells (1991), 57 Ohio St.3d 91, 97; Ruwe v.Bd. of Springfield Twp. Trustees (1987), 29 Ohio St.3d 59, 60.
 {¶ 13} Thompson did not present any evidence that the city had actual notice of the tire; instead, he tried to establish constructive notice. To create a genuine issue of material fact concerning constructive notice, Thompson needed to present evidence indicating that (1) the unsafe condition must have existed in such a manner that it could or should have been discovered, (2) the condition existed for such a length of time to have been discovered, and (3) if it had been discovered the city would have gained a reasonable apprehension of potential danger. Beebe v. City of Toledo (1958), 168 Ohio St. 203,151 N.E.2d 738, paragraph two of the syllabus.
 {¶ 14} Viewing the evidence in a light most favorable to Thompson shows Thompson presented enough evidence to allow reasonable minds to differ on whether the city had constructive notice of the tire. He showed that the tire could or should have been discovered by establishing that State Route 237 is a major thoroughfare in the city, located near the I-X Center and Cleveland-Hopkins International Airport, and heavily patrolled by the city's police. Thompson presented the testimony of witnesses who said that they had seen the abandoned tire on the roadway for at least 15 hours. The court also heard testimony from a city police officer who said that had he seen the tire on the roadway, he would have removed it. Consequently, the evidence viewed in a light most favorable to Thompson would show that reasonable minds could conclude that the city had constructive notice that the tire had been on the roadway.
 {¶ 15} The city does not contest these conclusions, but argues that Thompson failed to establish that the city's negligence was the proximate cause of the accident. It points to evidence it produced which showed that Thompson had been drinking before the accident. It maintains that it was just as likely that Thompson struck the tire because of his intoxication.
 {¶ 16} "* * * where an original act is wrongful or negligent and in a natural and continuous sequence produces a result which would not have taken place without the act, proximate cause is established, and the fact that some other act unites with the original act to cause injury does not relieve the initial offender from liability." Strother v. Hutchinson (1981),67 Ohio St.2d 282, 287. Normally, the issue of proximate cause involves questions of fact. Whiteleather v. Yosowitz (1983),10 Ohio App.3d 272, 274. However, if the plaintiff's quantity or quality of evidence on the issue of proximate cause requires mere speculation and conjecture to determine the cause of the event at issue, then the defendant is entitled to have a verdict directed.Renfroe v. Ashley (1958), 167 Ohio St. 472.
 {¶ 17} To support its argument that Thompson's intoxication was the proximate cause of the accident, the city cites us toGedra v. Dallmer (1950), 153 Ohio St. 258, in which paragraphs two and three of the syllabus state:
 {¶ 18} "2. In a negligence action, it is not sufficient for plaintiff to prove that the negligence of defendant might have caused an injury to plaintiff but, if the injury complained of might well have resulted from any one of several causes, it is incumbent upon plaintiff to produce evidence which will exclude the effectiveness of those causes for which defendant is not legally responsible.
 {¶ 19} "3. In such an action, if the cause of an injury to a plaintiff may be as reasonably attributed to an act for which defendant is not liable as to one for which he is liable, the plaintiff has not sustained the burden of showing that his injury is a proximate result of the negligence of the defendant."
 {¶ 20} The Gedra rule does not aid the city's argument. InWestinghouse Elec. Corp. v. Dolly Madison Corp. (1975),42 Ohio St.2d 122, 127, the supreme court explained that Gedra:
 {¶ 21} "* * * merely states the logical principle that where several reasonable explanations of an event are possible, the disproof of all but one necessarily acts as the proof of that one, and there are cases where this method of proof is the only way in which plaintiff can make his case. The rule does not intrude on the jury's role as the finder of facts, nor does it impose on a plaintiff the burden of always effectively eliminating all other possible causes in order to make his case, which would impose a burden of proof analogous to the burden in criminal cases of proof beyond a reasonable doubt. Rather, the rule holds that where the facts from which an inference of probable proximate cause must be drawn are such that it is as reasonable to infer other causes, plaintiff has failed to supply proof of probable cause."
 {¶ 22} Although the city presented strong evidence that Thompson appeared to be intoxicated at the time of the accident, Thompson testified differently. He told the jury that he drank just one beer and a partial shot of liquor. He denied telling anyone at the scene that he had been drunk, and another one of his witnesses corroborated that testimony. Since we are required to give Thompson the benefit of any evidentiary conflicts for purposes of a motion for a directed verdict, see Civ.R. 50(A)(4), we must assume for purposes of review that Thompson was not impaired while driving his motorcycle. Any conflicts in the facts are ultimately matters of credibility for the trier of fact. That being the case, the city cannot make out an argument that Thompson's intoxication was the proximate cause of him hitting the tire and there would have been no need for Thompson to eliminate other possible causes for the accident, since none would have existed for purposes of the motion for a directed verdict.
 {¶ 23} Even had there been uncontradicted evidence of Thompson's intoxication, it may not have proven fatal to Thompson's case. He presented evidence entitling him to the inference that others had struck the tire without corresponding proof that they were intoxicated. One of the witnesses noted that the tire had moved on the roadway, presumably from being struck by passing vehicles. It would be a reasonable inference that not all of those passing vehicles were operated by intoxicated motorists, thus suggesting that intoxication played no part in being the proximate cause of the accident. This is ultimately a question for the trier of fact.
 {¶ 24} If reasonable minds could differ on the issue of proximate cause, it necessarily follows that the court erred by directing a verdict in the city's favor. We therefore sustain the first assignment of error and remand for a new trial.
 1. II {¶ 25} The accident left Thompson with disfiguring scars even though he had been treated by a plastic surgeon following the accident. In preparation for his deposition testimony just prior to trial, the plastic surgeon asked Thompson to come to his office. Following that visit, the plastic surgeon testified that Thompson's scars had not satisfactorily healed and that future medical treatment for those scars would cost $13,000. The city filed a motion in limine to preclude the plastic surgeon from stating the cost of future treatment, arguing that Thompson showed no desire to have any further work done, thus making the $13,000 damage figure speculative. The court granted the motion in limine and Thompson contests the ruling.
 {¶ 26} In Hammerschmidt v. Mignogna (1996),115 Ohio App.3d 276, 282, we held that a plaintiff was not entitled to jury instructions on the issue of future medical expenses because: {¶27} "Plaintiff was further required to set forth not only an amount for the proposed surgery but a specific time frame in which he intended to incur the alleged expense. Without these specifics, the jury would have to speculate as to whether the surgery would in fact occur, when it would occur, and, if it did, how much it would cost."
 {¶ 28} The plastic surgeon testified that he initiated the office visit that occurred just prior to trial and that he had not been contacted by Thompson for more than one year. He allowed that Thompson might seek further treatment for the scarring, but viewed it as "not probable." As we earlier noted, Thompson only testified on cross-examination at trial and he gave no indication in any of that testimony that he would be seeking further medical treatment.
 {¶ 29} Given the lack of any evidence to show that Thompson would seek further medical treatment, we find that the court did not abuse its discretion by granting the motion in limine and excluding testimony relating to the possibility of future medical expenses.
 {¶ 30} We also agree with the city that Ohio law does not permit an expert to testify as to the expert's belief that future treatment can be a necessary component of damages without a corresponding indication that the treatment will, in fact, occur. Thompson's scarring was cosmetic — "unsightly" in the words of the plastic surgeon. Since Thompson had hitherto expressed no interest in seeking further treatment before being asked to go to the plastic surgeon's office, and gave no testimony to that effect at either deposition or at trial, there was no basis for finding that future treatment was expressed to the requisite degree of certainty required for the issue to go to the jury.
 {¶ 31} Judgment reversed and remanded.
This cause is reversed and remanded for proceedings consistent with this opinion.
It is, therefore, ordered that said appellant recover of said appellee his costs herein taxed.
It is ordered that a special mandate be sent to said court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Rocco, J., concurs.
Calabrese, Jr., J., dissents with separate opinion.