GABLE et al., Appellants and Cross–Appellees,

v.

VILLAGE OF GATES MILLS et al.; DaimlerChrysler
Corporation, Appellee and Cross–Appellant.

[Cite as *Gable v. Gates Mills,* 151 Ohio App.3d 480, 2003-Ohio-399.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

No. 80469.

Decided Jan. 27, 2003.

John F. Norton; Richard C. Alkire Co., L.P.A., and Richard C. Alkire, for appellants and cross-appellees.

Sutter, O'Connell, Mannion & Farchione, Thomas P. Mannion, Lawrence A. Sutter and Christina J. Marshall, for appellee and cross-appellant.

FRANK D. CELEBREZZE JR., Judge.

{¶ 1} The appellant, David Gable, appeals the verdict of the Cuyahoga County Court of Common Pleas, Civil Division, which returned a verdict in favor of the appellee, DaimlerChrysler ("Chrysler"). For the following reasons, we hereby vacate the judgment and remand the cause for a new trial.

{¶ 2} The instant matter stems from a motor vehicle accident which occurred on September 17, 1995. The appellant, Gable, was a passenger in his wife Pamela's 1994 Dodge Intrepid. While en route to church, Pamela lost traction and slid off the road into a guardrail. On impact with the guardrail, the passenger side air bag in the vehicle deployed and struck Gable. Gable was removed from the vehicle by EMS and transferred to Hillcrest Hospital, where x-rays revealed that his cervical spine had been shattered at three levels, resulting in total paralysis from the neck down.

{¶ 3} On January 13, 1997, a complaint was filed against Chrysler Corporation, now known as DaimlerChrysler, and multiple other defendants.[1] The complaint against Chrysler asserted two products liability claims. The first claim was based on consumer-expectation theory, and the second claim was based on a failure-to-warn theory. Essentially, Gable argued that his injuries were solely caused by the force with which the air bag deployed after impact with the guardrail. The matter proceeded to trial, and on August 2, 2001, a jury verdict was returned in favor of Chrysler.

{¶ 4} Gable appeals and presents seven assignments of error, and Chrysler presents one cross-assignment of error on appeal. The appellant's first assignment of error states:

---

1. All defendants except Chrysler were voluntarily dismissed.

{¶ 5} "I. In a civil case, a verdict that is concurred in by less than three-fourths of the jury violates Article I, Section 5, of the Ohio Constitution and is void as a matter of law. A judgment entered on a void verdict must be vacated when the infirmity of the verdict is brought to the attention of the trial court in a timely filed motion for new trial."

{¶ 6} The basis of the appellant's first assignment of error centers around the consistency of the jury's answers to the interrogatories. In the instant action, the appellant's products liability complaint against Chrysler centered on two separate claims: (1) that the air bags Chrysler installed in the appellant's Dodge Intrepid were more dangerous than an ordinary consumer would expect; and (2) that Chrysler failed to provide adequate warnings of the lethal potential of the air bags.

{¶ 7} Interrogatory No. 1 asked the jury to decide if the vehicle was more dangerous than an ordinary consumer would expect, and Interrogatory No. 2 asked the jury to decide if the air bag warning was inadequate.[2] Further, the interrogatories instructed the jury to sign a *single* general verdict form in favor of Chrysler if six or more jurors answered "NO" to both interrogatories.

{¶ 8} At the conclusion of deliberations, six jurors answered "NO" to Interrogatory No. 1 by signing their names to the interrogatory, thereby indicating that three-fourths of the jury did not believe that Chrysler had installed air bags that were more dangerous than an ordinary consumer would expect.[3] In response to Interrogatory No. 2, six jurors answered "NO," thereby indicating that three-fourths of the jury did not believe that Chrysler had failed to provide adequate warnings of the lethal potential of the air bags.[4]

■ {¶ 9} The dilemma which this court now faces relates to the general verdict form. In completing this form, six of the eight jurors signed the form. Those six jurors were Nos. 1, 2, 3, 4, 5, and 6.[5] In signing the general verdict form, it would appear at first glance that the appellant's two claims were foreclosed, since three-fourths of the jurors concurred in judgment. However, our dilemma relates to Juror No. 4's signing of the general verdict form, which foreclosed the appellant's right to recovery. Juror No. 4 dissented under Interrogatory No. 2, which equates to his belief that Chrysler did fail to provide

---

2. Each interrogatory addressed each separate and distinct cause of action.

3. Jurors No. 7 and No. 8 dissented from the majority and did not answer Interrogatory No. 1.

4. Jurors No. 4 and No. 8 dissented from the majority and did not sign Interrogatory No. 2.

5. Jurors No. 7 and No. 8 did not sign the general verdict form because they dissented under Interrogatory No. 1.

an adequate warning of the lethal potential of the air bags. Accordingly, it would reason that if Juror No. 4 dissented under Interrogatory No. 2, then it would be an error for him to sign the general verdict form, which directly conflicts with his position in relation to Interrogatory No. 2 that Chrysler "failed to provide adequate warnings of the lethal potential of the air bags."

{¶ 10} The Ohio Constitution, Section 5, Article I, requires the "concurrence of not less than three-fourths or more of the jury" for a verdict. Civ.R. 48 provides that "in all civil actions, a jury shall render a verdict upon concurrence of three-fourths of their number. The verdict shall be in writing and signed by each of the jurors concurring therein."

{¶ 11} The Ohio Supreme Court, in *O'Connell v. Chesapeake & Ohio RR. Co.* (1991), 58 Ohio St.3d 226, 569 N.E.2d 889, established the "same juror rule" in dealing with conflicts similar to the case at hand. The court in *O'Connell* held that a juror whose answer or dissent an interrogatory on a determinative issue is inconsistent with the general verdict is disqualified from signing the general verdict.

{¶ 12} In *O'Connell*, six jurors signed an interrogatory which determined that the defendant was negligent. Two of the jurors dissented from this determination, which equated to their belief that the defendant was not negligent. Thereafter, six jurors signed another interrogatory which apportioned the plaintiff's fault at 70 percent and the defendant's fault at 30 percent. Of the six jurors who signed the interrogatory apportioning fault between the parties, two were the dissenting jurors from the previous interrogatory establishing negligence.

{¶ 13} The Ohio Supreme Court, in reviewing this issue, determined that those two dissenting jurors had violated Civ.R. 48, which provides that the verdict shall be "signed by each of the jurors concurring therein." Since the dissenting jurors did not concur in the determination of negligence, they were therefore estopped from participating in the apportionment of fault. *O'Connell*, supra, 58 Ohio St.3d at 237, 569 N.E.2d 889.

{¶ 14} Specifically, the Ohio Supreme Court found:

{¶ 15} "Only *six jurors* found the appellant seventy-percent negligent in causing her own injuries and the railroad thirty-percent negligent in causing appellant's injury. Because jurors Bryson and Hall [dissenting jurors] should have been disqualified from taking part in the apportionment question, their votes as to apportioning fault are invalid. As such, fewer than three-fourths of the eight jurors agreed to the apportionment of fault. The Ohio Constitution requires the concurrence of three-fourths of the jury for a valid verdict. Therefore, the trial court erred in entering judgment for the railroad because such a verdict violates the constitution requirement." (Emphasis sic.) Id.

{¶ 16}   Accordingly, in the case at hand, Juror No. 4 dissented in Interrogatory No. 2, which determined that Chrysler did not fail to provide adequate warnings of the lethal potential of the air bags.  This dissent equates to his belief that Chrysler did in fact fail to provide adequate warnings of the lethal potential of the air bags.  The appellant asserts that it would be against reason to allow Juror No. 4 to participate in the signing of the general verdict form, which forecloses the appellant's ability to recover under that cause of action because Juror No. 4 determined that Chrysler was negligent and the appellant should be entitled to recovery.

{¶ 17}   However, under the instant facts we cannot endorse this argument. First, this matter is distinct from *O'Connell* in that each interrogatory in the case at hand was separate and unrelated to the other interrogatories.  In *O'Connell,* the jury was charged with determining if the defendant was negligent and, if negligence was found, to apportion fault between the parties.  Accordingly, as determined by the court in *O'Connell,* it would fly in the face of reason to allow a juror who had determined that no negligence existed to then participate in the apportionment of fault between the parties.  Id., 58 Ohio St.3d at 237, 569 N.E.2d 889.

{¶ 18}   In the case at hand, the appellant presented two separate and distinct causes of action.  Under Interrogatory No. 1 the jury was charged with the following question:

{¶ 19}   "Do you find by a preponderance of the evidence that the 1994 Dodge Intrepid was defective in that it was more dangerous than an ordinary consumer would expect at the time it was sold?"

{¶ 20}   Under Interrogatory No. 2, the jury was charged with the following question:

{¶ 21}   "Do you find by a preponderance of the evidence that the 1994 Dodge Intrepid was defective due to inadequate warnings or instructions at the time it was sold?"

{¶ 22}   After Interrogatory No. 2, the following directive was stated to the jury:

{¶ 23}   "If the answer of six of more jurors to Interrogatory No. 1 and/or Interrogatory No. 2 is 'YES,' move to Interrogatory No. 3. If the answer of six or more jurors to Interrogatory No. 1 and Interrogatory No. 2 is 'NO,' sign the verdict form in favor of the Defendant, and your deliberations are over."

{¶ 24}   In each interrogatory, six of eight jurors signed the particular interrogatory answering "NO." Therefore, in accordance with the instructions, six of the eight jurors signed the general verdict form.

{¶ 25} The appellant argues that because Juror No. 4 dissented in Interrogatory No. 2, he should have been precluded from signing the general verdict form, but the appellant fails to address the glaring weakness of this argument, that being the fact that each cause of action was separate and distinct from the other. The verdict under each cause of action has no bearing on the other cause of action. The intent of the jury was clear from the interrogatories propounded to the jury. Under Interrogatory No. 1, six jurors found in favor of Chrysler. Under Interrogatory No. 2, six jurors found in favor of Chrysler. Therefore, the manner in which the general verdict form was signed is harmless.

{¶ 26} Hindsight being 20/20, a better-formulated jury charge would have included a separate and distinct general verdict form after each interrogatory which would have reflected the intent of the six jurors that signed the interrogatory in relation to each separate and distinct cause of action. Nevertheless, in reviewing the record, it is clear that six of eight jurors found in favor of Chrysler on each separate and distinct cause of action, thereby satisfying Section 5, Article I, Ohio Constitution, and Civ.R. 48.

{¶ 27} Accordingly, the instant matter is clearly distinguishable from *O'Connell* in that each cause of action was separate and distinct from the other, thereby precluding the strict requirement of the "same juror" rule as enunciated in *O'Connell*. Unlike *O'Connell*, we are not faced with a situation which requires the same concurring jurors to agree in a sequence of interrogatories in reaching a final conclusion. Under each separate and distinct interrogatory, six different jurors might sign in the instant matter. Therefore, in the interest of clarity and efficiency, a separate and distinct general verdict form should have been included under each interrogatory in the case at hand. Accordingly, we find no merit to the appellant's first assignment of error.

{¶ 28} The appellant's second assignment of error states:

{¶ 29} "II. It is prejudicial error to exclude relevant evidence of a manufacturer's actual knowledge of the lethal potential of a product."

{¶ 30} The appellant argues that the lower court erred in denying him an opportunity to offer evidence which would have reflected Chrysler's knowledge of accidents that occurred before his accident which resulted in serious injury or death caused by air bags used in Chrysler vehicles.[6] The appellant contends that Chrysler had knowledge of the dangers posed by air bags and that Chrysler's knowledge of these "alleged" dangers directly correlated to its duty to warn

---

6. The court granted in part Chrysler's pretrial motion in limine to exclude evidence of prior air-bag-induced injuries. The trial court limited evidence of prior air bag injuries to those involving *adult right front seat passengers,* thereby excluding accidents involving the driver being injured by air bags, and children being injured by air bags.

potential or existing consumers. In failing to warn, the appellant contends, Chrysler's conduct was reckless because Chrysler's advertising campaign centered around the added safety that air bags provided to vehicle occupants notwithstanding Chrysler's actual knowledge of the "alleged" dangers posed by air bags. Specifically, the appellant attempted to offer evidence concerning an accident involving Mary Kay Riordan. The trial court limited this evidence because Riordan was the driver of a Chrysler vehicle at the time of her accident, not a passenger.

{¶ 31} The decision whether to admit evidence rests within the sound discretion of the trial court. *Wightman v. Consol. Rail Corp.* (1999), 86 Ohio St.3d 431, 715 N.E.2d 546. A trial court's ruling concerning the admissibility of evidence will not be reversed on appeal absent a clear abuse of that discretion which results in material adverse prejudice. *Renfro v. Black* (1990), 52 Ohio St.3d 27, 32, 556 N.E.2d 150. Even if a reviewing court would have reached a different conclusion concerning an evidentiary issue, this court will not simply substitute its judgment for that of the trial court. Id. To constitute a reversible abuse of discretion, the trial court's ruling "must be so palpably and grossly violative of fact or logic that it evidences not the exercise of will but the perversity of will, not the exercise of judgment but the defiance of judgment, not the exercise of reason but instead passion or bias." *Nakoff v. Fairview Gen. Hosp.* (1996), 75 Ohio St.3d 254, 256, 662 N.E.2d 1.

{¶ 32} The standard utilized to determine the admissibility of prior incidents was enunciated by the Ohio Supreme Court in *Renfro v. Black,* supra, wherein the court stated:

{¶ 33} "The law in the area of admissibility of 'prior accidents' or occurrence evidence was succinctly stated in *McKinnon v. Skil Corp.* (C.A.1, 1981), 638 F.2d 270. There, the court considered admissibility of prior accident evidence in a products liability action concerning an allegedly defective Skil saw. The plaintiff attempted to introduce answers to interrogatories regarding prior personal injury accidents involving the Skil saw. The answers did not indicate how the injuries occurred or whether they resulted from defective lower blade guards. Plaintiff contended that the interrogatory answers were admissible on Skil's knowledge of prior accidents relevant to the duty to warn, to establish evidence of the existence of defect, causation, and negligent design, and to attack the credibility of the defendant's expert witness. *The court held that '[e]vidence of prior accidents is admissible on the first four issues only if the proponent of the evidence shows that the accidents occurred under circumstances substantially similar to those at issue in the case at bar.* * * *' (Citations omitted.)" Id. at 277. (Emphasis added.) Id., 52 Ohio St.3d at 31, 556 N.E.2d 150.

{¶ 34} In reviewing the record, we can find no abuse by the trial court in limiting the introduction of evidence concerning similar incidents. In the instant matter, the appellant was severely injured while riding as an unbelted passenger in a Chrysler vehicle driven by his wife. Therefore, in applying *Renfro,* limiting evidence of similar incidents to those circumstances substantially similar to those at issue in the case at hand was reasonable; specifically, accidents involving front seat passengers of similar size, gender, position, traveling in Chrysler vehicles utilizing the same passive restraint systems as in the case at hand. Accordingly, the trial court limited evidence to incidents involving adult front-passenger-seat riders, while limiting evidence concerning those injured while driving and children. Since Riordan was the driver of a Chrysler vehicle when injured, this court can find no similarity with the instant matter which would warrant the introduction of evidence relating to her accident in furtherance of the appellant's cause of action.

{¶ 35} To endorse the appellant's position would open the floodgates to the admission of all evidence involving accidents concerning air bags, which may or may not have played a part in the parties' injuries. The standard enunciated in *Renfro,* supra, as applied to the facts at hand, clearly prevents the admission of evidence concerning prior incidents involving air bags unless those accidents involved front seat, adult passengers and the incidents occurred under circumstances substantially similar to those at issue in the case at hand.

{¶ 36} Accordingly, the appellant's second assignment of error is not well taken.

{¶ 37} The appellant's third assignment of error states:

{¶ 38} "III. In a products liability case based on R.C. 2307.75, it is prejudicial error to allow the manufacturer to introduce irrelevant evidence of an ideal standard of consumer conduct."

{¶ 39} Here, the appellant argues that the lower court erred in admitting testimony and evidence concerning his failure to wear a seat belt during the accident. Prior to trial, the appellant filed a motion in limine which sought to exclude testimony relating to his nonuse of a seat belt. The lower court denied this motion and permitted testimony as to limited circumstances and for limited purposes. The jury was thereafter permitted to hear testimony regarding the appellant's failure to wear his seat belt, which testimony understandably implied that he was in some manner comparatively negligent for his injuries.

{¶ 40} Chrysler argues that under R.C. 4513.263(F)(2),[7] the appellant's failure to wear his seat belt is admissible. The admission of this type of evidence is

---

7. R.C. 4513.263 was amended by Am.Sub.H.B. No. 350, effective January 27, 1997. The Ohio Supreme Court, however, in *State ex rel. Ohio Academy of Trial Lawyers v. Sheward* (1999), 86

controlled by R.C. 4513.263(F)(1) and (2), which, at the time of the appellant's accident stated:

{¶ 41} "(1) Subject to division (F)(2) of this section, the failure of a person to wear all of the available elements of a properly adjusted occupant restraining device or to ensure that each passenger of an automobile being operated by the person is wearing all of the available elements of such a device, in violation of division (B) of this section, *shall not be considered or used as evidence of negligence or contributory negligence, shall not diminish recovery for damages in any civil action involving the person arising from the ownership, maintenance, or operation of an automobile; shall not be used as a basis for a criminal prosecution of the person other than a prosecution for a violation of this section; and shall not be admissible as evidence in any civil or criminal action involving the person other than a prosecution for a violation of this section."* (Emphasis added.) See, also, *Craig v. Woodruff* (2000), 140 Ohio App.3d 596, 748 N.E.2d 592.

{¶ 42} R.C. 4513.263(F) also provided: "(F)(2) If, at the time of an accident involving a passenger car equipped with occupant restraining devices, *any occupant of the passenger car who sustained injury or death was not wearing an available occupant restraining device * * * * then, consistent with the Rules of Evidence, the fact that the occupant was not wearing the available occupant restraining device * * * is admissible in evidence in relation to any claim for relief in a tort action to the extent that the claim for relief satisfies all of the following:*

{¶ 43} "(a) It seeks to recover damages for injury or death to the occupant.

{¶ 44} "(b) The defendant in question is the manufacturer, designer, distributor, or seller of the passenger car.

{¶ 45} "(c) The claim for relief against the defendant in question is that the injury or death sustained by the occupant was enhanced or aggravated by some design defect in the passenger car or that the passenger car was not crashworthy." (Emphasis added.)

{¶ 46} In giving R.C. 4513.263(F)(2) a plain and ordinary reading, it is clear that the legislature intended to permit a defendant to admit evidence concerning a passenger's failure to wear a seat belt, but only if requirements (a) through (c) are satisfied under R.C. 4513.263(F)(2).

---

Ohio St.3d 451, 715 N.E.2d 1062, found H.B. 350 unconstitutional in its entirety. Accordingly, "the statutory language in existence prior to the enaction of H.B. 350 is now controlling." *Beck v. Adam Wholesalers of Toledo, Inc.* (June 2, 2000), Sandusky App. No. S-99-018, 2000 WL 706796.

{¶ 47} In the case at hand, the appellant argues that he was injured solely by a defective condition in the air bag installed in the 1994 Intrepid in which he was a passenger. The appellant does not argue that the vehicle was not crashworthy, nor does he argue that his injuries were enhanced or aggravated by a design defect, requirements under R.C. 4513.263(F)(2)(c) for the admission of seat belt evidence. Rather, the appellant's sole contention is that the air bag alone caused the debilitating injuries which he sustained.

{¶ 48} The mere fact that the jury was permitted to hear evidence concerning the appellant's failure to wear his seat belt was clearly error. Since this is a products liability action, the actions or failure to act by the appellant have no bearing on the instant action, because Chrysler's conduct is the only focus in an action based on products liability. In permitting that testimony, the conduct of Chrysler was now weighed against the conduct of the appellant, creating a clear comparative negligence scenario, a scenario prohibited under the established products liability principles, because the conduct of Chrysler, not the appellant, was the sole focus in the instant matter.

{¶ 49} In permitting the testimony, the lower court in effect permitted Chrysler to assert a defense which is prohibited in products liability actions. Further, in reviewing the record, the lower court failed to give any type of instruction to the jury regarding the testimony. Traditionally, a jury would not have heard testimony concerning comparative negligence; therefore, the only question would be in relation to the alleged defects in the product.

{¶ 50} In the case at hand, the jury was permitted to hear substantial evidence relating to the appellant's failure to wear his seat belt, but was left with no instruction on how to treat the evidence. Naturally, absent an instruction, the jury could easily have concluded that the consumer was in some manner negligent in reaching its conclusion on a strict liability issue, an inference clearly prohibited.

{¶ 51} Accordingly, we hereby find that it was a violation of R.C. 4513.263(F)(2) to admit evidence concerning the appellant's failure to wear his seat belt. Moreover, the error was compounded by the absence of a jury instruction delineating the manner by which the jury should treat the testimony.

{¶ 52} The admission of evidence pertaining to the appellant's failure to wear his seat belt was clearly prohibited by statute. Therefore, we find the appellant's third assignment of error to have merit.

{¶ 53} The appellant's fourth assignment of error states:

{¶ 54} "IV. In a products liability case predicated on the consumer expectation and duty to warn provisions of R.C. 2307.75 and 2307.76, it is prejudicial error to allow the manufacturer to introduce irrelevant evidence of its compliance

with a government regulation which was never applicable to the product in question."

■ {¶ 55} Here, the appellant argues that the trial court erred in allowing Chrysler to introduce evidence which indicated that the air bags installed in the Dodge Intrepid complied with federal regulations. He contends that the instant cause was premised on a consumer expectation of the product and whether the product is more dangerous than might be expected. Accordingly, as urged by the appellant, the standards enunciated by the government are not probative of this issue. Therefore, in following appellant's reasoning, evidence relating to Chrysler's compliance with federal regulations was not relevant under Evid.R. 402, which provides that "evidence which is not relevant is not admissible." We decline to endorse this argument and find no merit to this assignment of error.

■ {¶ 56} Under Ohio law, compliance with a statutory regulation does not immunize a manufacturer from liability. Compliance, along with adherence to industry customs and standards, can be utilized as a guide, but is not conclusive of nonliability. Rather, such evidence should be considered by a jury when determining what constitutes the reasonable expectations of an ordinary consumer. See *Sours v. Gen. Motors Corp.* (C.A.6, 1983), 717 F.2d 1511; *Knitz v. Minster Machine Co.* (1982), 69 Ohio St.2d 460, 23 O.O.3d 403, 432 N.E.2d 814; *Temple v. Wean United, Inc.* (1977), 50 Ohio St.2d 317, 4 O.O.3d 466, 364 N.E.2d 267.

{¶ 57} Accordingly, the fact that Chrysler complied with Federal Motor Vehicle Safety Standard ("FMVSS") 208, Section 571.208, Title 49, C.F.R., by incorporating air bags in the 1994 Dodge Intrepid in no manner absolves Chrysler of liability.[8] Rather, the fact that Chrysler complied with the aforementioned standard is relevant evidence which should be heard by the jury in making its determination concerning liability on the part of Chrysler. The fact that Chrysler complied is relevant to the jury's evaluation of the overall design of the vehicle and is clearly probative of what a reasonable consumer would expect when evaluating a purchase.

{¶ 58} Therefore, this court cannot conclude that it was an error to permit the jury to hear evidence which reflected Chrysler's compliance with the federal safety standard in relation to air bag implementation. As stated, the fact that Chrysler was in compliance in no manner insulates it from liability; rather, the fact that Chrysler was in compliance is clearly a factor to be weighed by the jury

8. Under FMVSS 208, air bags were not required as mandatory devices until September 1, 1997. Although not required, FMVSS 208 explicitly permitted, and anticipated, that some manufacturers would comply prior to the standard's effective date.

in reaching a verdict. Therefore, the evidence was clearly permissible under Evid.R. 402, and admissible.

{¶ 59} The appellant's fifth assignment of error states:

{¶ 60} "V. In a products liability case predicated on the consumer expectation provision of R.C. 2307.75(A)(2), it is prejudicial error to permit the manufacturer to introduce unsponsored trade association and regulatory agency statistical evidence of the product's societal value."

{¶ 61} As in the appellant's fourth assignment of error, the appellant argues in the instant assignment that the statistical evidence concerning the societal value of air bags was irrelevant to the issues in question and therefore inadmissible, pursuant to Evid.R. 402. Specifically, the appellant argues that under a consumer expectation claim, the issue is the consumer's perception of the product and whether it is more dangerous than might be expected. Accordingly, as urged by the appellant, statistical evidence of the product's societal value is not probative of the issue at hand unless there is foundational proof that the consumer has been exposed to that evidence and the evidence has influenced the consumer's expectations. We decline to endorse this argument and find no merit.

{¶ 62} At trial, the appellant sought to exclude the admission of data contained within the National Accident Sampling System ("NASS"), which Chrysler's defense expert utilized in formulating his opinions concerning the accident. In *State v. Blair* (1990), 70 Ohio App.3d 774, 794, 592 N.E.2d 854, the court held that "[s]tatistical evidence is admissible when used to establish the significance of an expert opinion which is based upon scientific analysis," citing *Owens v. Bell* (1983), 6 Ohio St.3d 46, 6 OBR 65, 451 N.E.2d 241. With respect to the admission and exclusion of evidence at trial, it is axiomatic that such decisions are within the sound discretion of the trial court. *State v. Sage* (1987), 31 Ohio St.3d 173, 31 OBR 375, 510 N.E.2d 343. Moreover, a reviewing court should not interfere with such decisions unless the trial court has clearly abused its discretion and the defendant has been materially prejudiced thereby. *State v. Grunden* (1989), 65 Ohio App.3d 777, 784, 585 N.E.2d 487.

{¶ 63} Accordingly, we cannot conclude that the lower court abused its discretion in allowing the admission of statistical evidence contained within NASS. At trial, the appellant presented the testimony of Dr. Marsolais, which indicated that he had never seen injuries similar to those sustained by the appellant; therefore, the injuries must have been proximately caused by the deploying air bag. In response to the testimony of Dr. Marsolais, Chrysler countered with the testimony of Dr. Verne Roberts, Ph.D., which outlined his experiences concerning injuries and deploying air bags. Further, Dr. Roberts testified that his opinions were largely based on data compiled by NASS. In

utilizing the data compiled by NASS, Dr. Roberts looked at 5,000 cases that year involving vehicle accidents and used 310 different data elements in order to characterize the crash, the vehicles, and the people involved. Additionally, testimony outlined the sampling methods utilized by NASS and the basis of the analysis of the NASS database.

{¶ 64} In reviewing the evidence and statistics compiled by NASS, it was Dr. Roberts's opinion that air bags have been doing a better job over time, particularly when utilized in conjunction with a three-point belt. Further, Dr. Roberts's testimony highlighted the fact that his opinion was based on the review of thousands of vehicle accidents, as opposed to Dr. Marsolais's findings, which were admittedly based on personal observations and experiences.

{¶ 65} Since Chrysler's expert's opinion differed from the opinion offered by the appellant's expert, it was clearly within Chrysler's province to elicit testimony which would contradict the testimony of the appellant's expert. Evid.R. 607 provides: "(A) Who may impeach. The credibility of a witness may be attacked *by any party* except that the credibility of a witness may be attacked by the party calling the witness by means of a prior inconsistent statement only upon a showing of surprise and affirmative damage." (Emphasis added.) Therefore, Chrysler was free to submit the testimony of Dr. Roberts in an effort to refute the opinions proffered by the appellant's expert. The testimony with regard to the data contained in the NASS database was clearly probative and relevant to the nature of the appellant's injuries and injuries suffered by others caused by air bags.

{¶ 66} Therefore, in light of our holding with regard to appellant's third assignment of error, the remaining assignment and cross-assignments of error are hereby rendered moot. The jury verdict is hereby vacated, and the instant matter is remanded to the lower court for new trial, since the introduction of seatbelt evidence was highly prejudicial and without merit under the facts and evidence presented at trial in the instant matter.

{¶ 67} The judgment is vacated, and the cause is remanded to the lower court for further proceedings consistent with this opinion.

Judgment accordingly.

JAMES D. SWEENEY, P.J., and DIANE KARPINSKI, J., concur.